UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re: Hanford Nuclear Reservation Litigation, | NO.   CV-91-3015-WFN<br><br>ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW |

**This Order Relates to:  All Cases**

A hearing on Defendants' Renewed Motion for Judgment as a Matter of Law was held July 26, 2005 in Spokane, Washington.  The following attorneys represented the listed parties:

| **Plaintiffs** | **Counsel** |
|---|---|
| Jaros | Roy S. Haber |
| Matthies | |
| Seaman | |
| Hamilton/Criswell | Peter Nordberg<br>Louise Roselle[1] (Telephonic) |
| Evenson | Richard Pierson |
| Berg | Richard Eymann<br>Steven Jones |
| Berg/Lumpkin | David Breskin |

---

[1]Lead Counsel for Plaintiffs.

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW  - 1

| Defendants | Counsel |
|---|---|
| E.I. DuPont DOE Nemours & Co. [DuPont] | Kevin T. Van Wart[2]<br>Tim Duffy |
| General Electric Co. [GE] | |
| UNC Nuclear Industries, Inc. [UNC] | |

Pro se Plaintiffs Noreen L. Wynne, Carmela M. Destito-Buttice (for late John P. Destito, Jr.), Marylin F. Mlnarik and Kerry Todd were not present.

Kevin Van Wart and Tim Duffy presented oral argument on behalf of the Defendants; Peter Nordberg and David Breskin presented argument on behalf of the Plaintiffs. The Court considered the file, the briefing on the Motion, and the argument of counsel. This Order is entered to memorialize and supplement the oral rulings of the Court. The Court also granted Plaintiffs' request to set a trial for the claims of Shannon Rhodes and discussed the appropriateness of a Rule 54(b) certification of the *Durfey* Plaintiffs' claims. A separate Order addresses those issues.

## BACKGROUND

A jury trial on six bellwether Plaintiffs' claims commenced April 25, 2005. A 12-person jury returned a verdict on May 19, 2005 in favor of Plaintiffs Steven Stanton and Gloria Wise and in favor of the Defendants on the claims of Plaintiffs Wanda Buckner, Shirley Carlisle, and Katherine Goldbloom. The jury did not reach a verdict on the claims of Shannon Rhodes. The Court declared a mistrial on the claims of Plaintiff Rhodes and entered final judgment as to the other bellwether Plaintiffs. Order Re: Judgments on Bellwether Plaintiffs, filed May 20, 2005 (Ct. Rec. 1959); Judgment filed May 19, 2005 (Ct. Rec. 1958).

---

[2]Lead Counsel for Defendants.

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 2

At the close of the Plaintiffs' presentation of evidence, the Defendants made an oral Rule 50(a) motion for judgment as a matter of law.  Trial Transcript [TT]  2654-61, filed 5/16/05. Defendants renewed the Motion June 6, 2005 (Ct. Rec. 1964). Defendants currently assert that there is no legally sufficient evidence from which a reasonable jury could find that I-131 from Hanford more likely than not was a proximate cause of the injuries claimed by Plaintiffs Rhodes, Wise and Stanton.  Defendants assert that the only evidence related to causation of these Plaintiffs' injuries was the testimony of Drs. Hoffman and Chopra but that neither expert provided a basis on which a reasonable jury could conclude that the Plaintiffs had met their burden of proof.

Plaintiffs respond that the Defendants' Motion is both procedurally flawed and substantively un-meritorious.  Procedurally, Plaintiffs argue *inter alia* that the Defendants make several arguments that they have waived for failure to raise the arguments in the pre-verdict Rule 50(a) motion. On the substantive merits, Plaintiffs assert that the Defendants disregard the detailed testimony of Plaintiffs' experts and invite the Court to nullify credibility determinations that are properly the province of the jury.

## DISCUSSION

The starting point for the Court's determination of any motion is an exploration of the applicable law related to the motion and the legal standard to be applied.[3]

Procedural Issues.  From a procedural standpoint, a party may bring a Rule 50(b) motion only if the party previously made a Rule 50(a) motion at the close of the opposing party's evidence. *Graves v. City of Coeur d'Alene*, 339 F.3d 828, 838 (9th Cir. 2003); *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 887 (9th Cir. 2002) (strict construction of this requirement by the Ninth Circuit).  Here, the Defendants made a Rule 50(a) motion at the close of Plaintiffs' evidence and thereby preserved their right to file a Rule 50(b) motion.

---

[3]Defendants fail in their Memorandum to set forth the standard for a Rule 50 motion.

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 3

1      Rule 50 also mandates that "[a] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) *citing* Advisory Committee Notes to the 1991 Amendments, FED. R. CIV. P. 50(b). Here, Defendants' pre-verdict Rule 50(a) motion, in relevant part, asserted that the Plaintiffs had failed to prove causation in accordance with the Court's burden of proof ruling. TT 2654. As to Dr. Hoffman, Defendants argued that he used inflated risk values to calculate a probability of causation [PC] so that the true PCs were less than 50% and that therefore no causation had been proven. *Id.* As to Dr. Chopra, the Defendants argued only that he was unable to say that there was greater than a 50% probability that radiation caused the disease and therefore Plaintiffs had failed to meet their burden of proof. *Id.*

     On their Rule 50(b) Motion, the Defendants assert that: (1) differential diagnosis could not establish that radiation caused thyroid cancer; (2) that Dr. Chopra did not perform a reliable differential diagnosis; (3) that Dr. Chopra's testimony was not based on facts; and (4) that Dr. Hoffman's testimony was insufficient to prove that Plaintiffs' injuries were more likely than not caused by Hanford emissions. The issue raised on both Motions was causation and the Court is satisfied that Defendants are not procedurally barred from raising the arguments they have made on their Rule 50(b) Motion.

     The Plaintiffs also argue that pursuant to Rule 103 the Defendants did not preserve their objections based on *Daubert* challenges. The Court will not reach this procedural issue as the Motion can be decided on the substantive merits.

     <u>Substantive Issues.</u> Defendants would be entitled to a favorable ruling on their Motion for Judgment as a Matter of Law if the Court determined that there was "no legally sufficient evidentiary base for a reasonable jury to find for" Plaintiffs. FED. R. CIV. P. 50(a) (West 2005); *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003) (where a jury could reasonably infer that plaintiff satisfied elements of his claim a motion for judgment as a

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 4

matter of law must be denied). Said in another way, "judgment as a matter of law is proper if the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion." *Graves*, 339 F.3d at 838. The Supreme Court has similarly instructed that a district court "draw all reasonable inferences in favor of the non moving party and [that the court] not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (the standard is the same as for granting summary judgment) *see also Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-52 (1986) ("the inquiry under each [summary judgment and directed verdict motions] is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). The Court is to review all of the evidence in the record but "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. The Supreme Court explained:

> The court should give credence to the evidence favoring the non movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.

*Reeves*, 530 U.S. at 151 (internal quotations omitted).[4] It appears to this Court and counsel that the same standard applies whether the jury actually reached a verdict, as they did for Mr. Stanton and Ms. Wise, or whether the jury was unable to reach a verdict, which occurred as to Ms. Rhodes' claims.

---

[4] Although the Court is to review all of the evidence, it should not consider evidence that may have been admitted in error. Plaintiffs argue to the contrary citing *Schudel v. GE*, 120 F.3d 991, 995-96 (9th Cir. 1997). However, this case was abrogated for that proposition by *Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000) ("inadmissible evidence contributes nothing to a legally sufficient evidentiary base") (internal quotations omitted)).

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 5

In making its determination, the district court has the dual responsibilities of assuring that the judgment is consistent with the controlling law as required by the Due Process Clause of the Fifth Amendment while not interfering with factual determinations made by the jury consistent with the Seventh Amendment. Advisory Committee Notes, 1991 amend. (West 2005). It is against this standard that the Court will address the substantive issues raised by Defendants on their Rule 50 Motion.

<u>Differential Diagnosis and Causation of Thyroid Cancer</u>. It is argued that differential diagnosis cannot be used to determine the cause of the Plaintiffs thyroid cancer because the cause of most cases of thyroid cancer is unknown. The Defendants' briefing cites an exhibit discussed at trial. TT 2601. While the exhibit is accurately cited, the Defendants failed to disclose that the exhibit went on to state that I-131 can increase the risk of thyroid cancer especially among children exposed at a young age. *Id.* There was evidence that radiation exposure is a known cause of thyroid cancer. TT 918. The Plaintiffs at issue were all undisputedly exposed to radiation in the form of I-131 at a young age. The blanket exclusion of differential diagnosis as a methodology for exploring causation just because not all causes of the disease are known, when the substance at issue is a known cause, would be unnecessarily restrictive and no Ninth Circuit authority requires it.

Also cited is the Federal Judicial Center, *Reference Manual on Scientific Evidence [Manual]* 447 n. 139 (2d ed. 2000) for the proposition that cases of unknown etiology are often held to preclude differential diagnosis analysis. Again, while the citation is accurate, the briefing fails to acknowledge that the *Manual* also went on to state in the same footnote that a situation where some causes are unknown complicates causation analysis, **but** in those circumstances "[t]he plaintiff may be able to rely on inferences from epidemiological, toxicological, or other evidence, however." *Id.* That is precisely what Plaintiffs did in this case. Dr. Chopra relied on epidemiological literature as well as other experts and his own extensive years of experience in treating hundreds if

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW  - 6

not thousands of cases of thyroid cancer to draw the inference that I-131 was capable of causing thyroid cancer. TT 914, 918.

Finally, Defendants argue that the absence of a bio-marker, or some test that definitively says this thyroid cancer was caused by radiation, means that a medical expert cannot use differential diagnosis to do a causation analysis related to thyroid cancer and radiation exposure. It is undisputed that there is no bio-marker or "smoking gun" to identify thyroid cancer caused by radiation in the same way there is no bio-marker to identify a lung cancer caused by tobacco use. TT 1070. Nonetheless, Plaintiffs qualified medical expert, Dr. Chopra, testified that this did not make a causation analysis impossible and in fact it is what doctors do all the time. TT 926. Defendants discount this as a "self-serving statement", Defendants' Memorandum, filed 6/20/05, Ct. Rec. 1976, p. 8, because Dr. Chopra could not cite a text that said specifically that doctors can diagnosis thyroid cancer as being caused by radiation. The *Manual* explains how physicians use the "art and science of clinical reasoning" in evaluating patient's conditions. *Manual* 461. It is not surprising that Dr. Chopra could not recall a citation that satisfied the specificity requested by the Defendants. Still, the process of differential diagnosis he set out in detail in his testimony, TT 917-25, is consistent with that described in the *Manual.* There is no authority that supports the proposition that the lack of a bio-marker establishes a blanket rule that differential diagnosis cannot be used in a causation analysis. The Court concludes that differential diagnosis is a proper methodology to address the causation link between I-131 exposure and thyroid cancer.

<u>Adequacy of Dr. Chopra's Testimony</u>. The Defendants argue that Dr. Chopra's testimony did not meet the Ninth Circuit requirement for a reliable differential diagnosis nor was it based on the facts. They rely heavily on the Court's stated concerns about Dr. Chopra's evaluation of alternative causes made at the time of the *Daubert* hearings. The Court observed that it was concerned that Dr. Chopra just gave "lip service" to the requirement that alternative causes be evaluated and ruled out. 2/16/05 Transcript, 341. When the transcript

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 7

is read in total the Court's concerns were obvious, but the Court also observed that Dr. Chopra's medical reports were good and though the Court considered it a close call, the Court ruled that Dr. Chopra's testimony satisfied the *Daubert* standard.

Defendants assert that Dr. Chopra's testimony was more glib and conclusory than his reports and that he offered no rational basis for excluding potential causes and that his analysis did not include all the facts because his medical history did not uncover some potentially significant information. First, it is important to determine what the Ninth Circuit requires in terms of a reliable differential diagnosis and then measure Dr. Chopra's methodology against the standard. The Circuit quoted with approval a definition of differential diagnosis from the 4th Circuit:

> Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated. A reliable differential diagnosis typically, though not invariably, is performed after "physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests," and generally is accomplished by **determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.**

*Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir. 2003) (emphasis added), quoting *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 262(4th Cir. 1999).

Here there is no question that Dr. Chopra is a nationally and internationally recognized medical expert in thyroid disease and as such is a qualified expert.[5] His methodology

---

[5] Dr. Chopra has been a full professor at UCLA since 1978. He has been engaged in research and teaching regarding diseases of the thyroid throughout his career. He is responsible for 283 publications and has developed at least one diagnostic thyroid test that is still in current use. He also has maintained an active clinical practice of mostly patients with thyroid disease. TT 905-915, 956-57.

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 8

of performing a differential diagnosis was described in detail in his testimony and included all of the considerations of physical examination, the taking of medical histories, and the review of clinical tests, including laboratory tests, discussed by the Ninth Circuit. TT 917-25. It appears Dr. Chopra's methodology is the same as that relied upon by experts in his field and his methodology is therefore reliable and satisfies the Circuit's requirements. *Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1129 (9th Cir. 1998). Dr. Chopra testified that there is nothing he knows how to do except to make determinations to a reasonable degree of medical certainty. TT 915. He looked at the Plaintiffs as a doctor and a scientist in the same way he does with all his patients. TT 1076. The Court concludes that Dr. Chopra's methodology was what is commonly used by medical doctors.

The next question is whether Dr. Chopra adequately performed his differential diagnosis for each Plaintiff to rule out potential causes or determine the most likely cause of those that could not be ruled out. Defendants' argue that Dr. Chopra did not absolutely rule out all other potential causes of the Plaintiffs thyroid cancer. That is a more stringent standard than Rule 702 requires. *Heller v. Shaw Industries*, 167 F.3d 146, 156 (9th Cir. 1999) ( "A medical expert's causation analysis should not be excluded because he or she has failed to rule out every possible alternative cause of a plaintiff's illness.") Ruling out causes absolutely is one option *Clausen* offers but it is not the only one. *Clausen* also states that the medical expert performing a differential diagnosis can determine which of those potential causes that cannot be excluded is the most likely. *Clausen,* 339 F.3d at 1057. This later acceptable option is what Dr. Chopra did in the evaluation of these three Plaintiffs. When his testimony is taken as a whole, rather than considered piecemeal, it is clear that he made a probabilistic assessment and provided explanations for why he did not consider the alternatives causes to be the most likely cause, which satisfies the Ninth Circuit requirement. *Manual* p.

465("Medical diagnosis is not an exact science . . . physicians make probabilistic judgments on a day-to-day basis . . . .)  Dr Chopra testified succinctly regarding the causes of thyroid cancer:

> The two most important causes [of thyroid cancer] are, one, radiation exposure, and two, a familial gene mutation, which leads to familial adenocarcinoma of the thyroid,  Those are the two critical things.
>
> The other factors are relatively low in importance and they include, like I mentioned, familial polyposis, there is a disease called Carden's (phonetic) disease – you know, if someone is living in an endemic goiter area . . . those are other factors, but they are of lesser importance.

TT 937-38.  Also included in the lesser important factors was exposure to other carcinogens.  TT 938.  Thus he established that what was most important in determining causation was whether the person had been exposed to radiation and whether he/she had a family history of thyroid cancer.  He also established what were other factors that should be weighed but which were of less significance.  A family history of colon polyps (familial polyposis) is something to consider but is a minor factor in the causation analysis along with some other factors he mentioned. TT 922.  Dr. Chopra's conclusion was that it would be unlikely that without Hanford's radiation exposure that Ms. Rhodes, Ms. Wise or Mr. Stanton would have developed thyroid cancer.  TT 954.

Defendants challenged Dr. Chopra on whether some factors he considered to be minor could have been the cause of Plaintiffs' disease,  but Dr. Chopra concluded that it was more likely that the major factor of radiation exposure from Hanford at a critical time in the Plaintiffs' thyroid development was the cause.  This is consistent with the standard set out in *Clausen.*  339 F.3d at  1057 (reliable differential diagnosis requires that the physician determine the possible causes for the patient's symptoms and then eliminate each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely).  As stated in *Heller*

> only where a defendant points to a plausible alternative cause and the doctor offers no explanation for why he or she has concluded that was not the sole cause, [is] the doctor's methodology unreliable.

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW  - 10

*Heller*, 167 F.3d at 156(internal quotations and citation omitted); see also *Clausen,* 339 F.3d at 1061(expert did not utterly fail to offer an explanation for why the alternative cause was ruled out so his analysis was reliable.) Dr. Chopra did not utterly fail to offer an explanation as to why he did not consider that minor factors were the most likely cause of Plaintiffs' thyroid cancers.

<u>Shannon Rhodes</u>. Dr. Chopra's causation analysis of Shannon Rhodes included the following considerations: she was exposed to a mean dose of radiation of 6.9 rads with a 90% confidence range of 2.3 to 17 rads. Dr. Chopra said the dose was "potentially capable of causing thyroid cancer" but he had to complete his entire evaluation to make a judgment about causation. TT 933. Her most significant exposure was at age 3, a critical time when her thyroid gland was at heightened risk, and she developed Hurthle cell thyroid cancer after a latency period of 28 years. Her cancer metastasized to the lungs. She was not exposed to other significant radiation except background and from the Nevada Test Site - but that was when she was age 14 and not as much at risk as at age 3. TT 936. In addition she had hyperparathyroidism and Dr. Chopra testified "when we see a patient which has both overactive parathyroid gland at the parathyroid nodules and thyroid cancer, we are very strongly suspicious that radiation was a factor in the occurrence of that of both of those." TT 939. The fact that her cousin had thyroid cancer was not considered important as in order to be significant there would have to be several family members effected, not just one, and first degree family members (parents, sibs, children) would be more concerning as opposed to cousins. TT 940. His medical opinion was that "it is a reasonable medical probability that Shannon Rhodes' thyroid cancer was caused by or contributed to importantly by her exposure to radiation and radioactive iodine." TT 942-43.

Defendants questioned Dr. Chopra on the relatively low mean dose of 6.9 rads asserting that it is less than background dose of .3 rads/year by age 30. Dr. Chopra testified however, that whole body dose of .3 rads/year translates into a thyroid dose of only .03 rads/year. TT

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 11

1076. Thus her background dose at age 3 of .03 rads was significantly lower than her Hanford dose at age three when her thyroid was most vulnerable.

Defendants questioned why Dr. Chopra did not consider DDT as a potential cause. Dr. Chopra testified that he did not consider this likely as there are no studies showing that DDT causes thyroid cancer. TT 1036. Admittedly, Ms. Rhodes apparently did not express any exposure to DDT when giving her family history to Dr. Chopra.

Defendants questioned that Ms. Rhodes' 87 year old mother had a goiter implying some familial thyroid disease. Dr. Chopra testified that goiter, which is an enlarged thyroid, is common with increasing age and thus not significant. TT 1078. Clearly the mother did not have a diagnosis of adenocarcinoma of the thyroid which Dr. Chopra had testified was what had to be evaluated as a competing cause of thyroid cancer.

Defendants questioned whether Hurthle cell cancer has been shown to be caused by radiation exposure. Dr. Chopra testified that papillary, as opposed to follicular thyroid cancer is the most common form of thyroid cancer. Ms. Rhodes has Hurthle cell thyroid cancer which is one kind of follicular (as opposed to papillary) cancer that constitute about 15-20% of the follicular thyroid cancers. Many studies of radiation and cancer report papillary or follicular cancer but do not break out Hurthle cell as a subtype of follicular cancer. TT 1047-54. Dr. Chopra cited one source that indicated that there is a 39 percent increase in incidence of Hurthle cell cancer in persons exposed to radiation. TT 1079. Just because Ms. Rhodes has a rarer form of thyroid cancer does not mean that it was less likely to be caused by radiation.

Defendants argue that the jury divided 10-2 in favor of Defendants. This facts is not a part of the record. Nor is the jury split relevant to the Court's inquiry on this Rule 50 Motion.

Drawing all reasonable inference in Plaintiff Rhodes favor and avoiding weighing of the evidence, as this Court must, the Court cannot conclude that the evidence permits only one

1  reasonable conclusion on the question of whether I-131 more probably than not caused Ms.
2  Rhodes thyroid cancer.  Given the evidence a reasonable jury could conclude that Ms.
3  Rhodes' cancer was not caused by radiation or it could conclude the opposite.  A new trial
4  must be conducted to allow a jury to make this determination.

5  <u>Gloria Wise</u>   Dr. Chopra's causation analysis of Gloria Wise included the follow-
6  ing considerations:  she was exposed to a mean dose of radiation of  27 rads with a
7  90% confidence range of 8.4 to 66 rads, which he testified was a substantial
8  amount.  According to Defendants' experts the mean dose was 15 rads. The different
9  doses did not change Dr. Chopra's opinion as he believed both were sufficient for causation.
10 Her most significant exposure was during her first year of life, a critical time when her
11 thyroid gland was at heightened risk, and she developed goiter, Hashimoto's thyroiditis
12 and thyroid cancer after a latency period of 49 years.  All these diseases can be secondary
13 to exposure to radiation.  Her brother and second cousin died of colon cancer. TT 947-949.
14 Dr. Chopra  advised that it was possible that she was in a more sensitive population with
15 perhaps a familial polyposis condition.  That is where people have colon polyps which
16 can increase the risk of colon cancer.  There is a relatively minor increase of thyroid
17 cancer in people with colon polyps. TT 949-50, 1057.  His medical conclusion however,
18 was that "it [radiation from Hanford] was a more probable than not cause of her thyroid
19 disease. TT  950-51.

20 Defendants questioned Dr. Chopra about Ms. Wise's history of colon polyps which Dr.
21 Chopra had already concluded present a minor risk.  They also questioned whether Dr.
22 Chopra had recommended better follow-up for Ms. Wise on her thyroid medications - which
23 he admitted he had.  TT  1056-59.

24 Drawing all reasonable inference in Plaintiff Wise's favor and avoiding weighing of the
25 evidence, as this Court must, the Court cannot conclude that the evidence permits only one
26 reasonable conclusion on the question of whether I-131 more probably than not caused Ms.

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 13

Wise's thyroid cancer. The jury was entitled to credit the Plaintiff's evidence and make the causation determination in her favor.

<u>Steven Stanton</u>   Dr. Chopra's causation analysis of Steven Stanton included the following considerations: he was exposed to a mean dose of radiation of 27 rads with a 90% confidence range of 8.5 to 60 rads, which he testified was a very substantial amount. His most significant exposure was in utero and during his first few months of life, a critical time when his thyroid gland was at heightened risk, and he developed papillary thyroid cancer after a latency period of less than 52 years. TT 943-946. Dr. Chopra did not find any family history of thyroid cancer, other radiation exposure or chemical exposure that could be potentially carcinogenic in a significant enough amount. He acknowledged that Mr. Stanton's brother had testicular cancer but that has no relevance to Mr. Stanton's thyroid cancer. TT 946. Dr. Chopra stated in conclusion that the radiation exposure "was an important and very probably cause of thyroid cancer" for Mr. Stanton. TT 947.

Defendants confirmed that Dr. Chopra considered Mr. Stanton to appeared to be a healthy individual, thought Dr. Chopra added that Mr. Stanton had thyroid cancer which could be metastatic at any time. TT 1059. They also questioned whether Dr. Chopra considered the fact that Mr. Stanton's family was in the dry cleaning business since in the Redlands case he was looking at TCE as a cause of cancer and since TCE is used in dry cleaning. TT 1060-61. Dr. Chopra replied that he thought he looked at that but did not attach much significance to it. Id. Mr. Stanton had previously testified that he did laundry delivery for his family, not that he worked in the dry cleaning end of the business or that the business used TCE. TT 738.

As to Mr. Stanton, the jury was entitled to credit the Plaintiffs' evidence and make the causation determination in his favor. The Court cannot conclude that the evidence permits only one reasonable conclusion and that the conclusion is the opposite of the one the jury reached.

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 14

1     <u>Dr. Hoffman's Testimony on Causation</u>.  As the Court concludes that Dr. Chopra's testimony was sufficient for a reasonable jury to find for Plaintiffs there is no need to evaluate Dr. Hoffman's testimony related to causation.

## CONCLUSION

On a Rule 50 motion the Court must view the evidence presented by the Plaintiffs (the non-moving party) in the light most favorable to them and makes all inferences in Plaintiffs' favor. *Reeves,* 530 U.S. at 150.  The Court must considers only evidence presented by the Defendants that must be believed by the jury. *Id.* at 151.  The Court may not weigh the evidence. *Kennedy,* 161 F.3d 1228.  While the Defendants' raised potential causes of Plaintiffs' diseases other than the Hanford I-131 exposure, they did not establish through cross examination or expert testimony that the jury was required to believe that I-131 did not cause the Plaintiffs' diseases.  Based on the evidence, judgment as a matter of law cannot be proper under these circumstances because it would be impossible to say the evidence permits only one reasonable conclusion as to each of the three Plaintiffs. *Graves,* 339 F.3d at 838.  There was legally sufficient evidence from which a reasonable jury could find that I-131 from Hanford more likely than not was a proximate cause of the injuries claimed by Plaintiffs Rhodes, Wise and Stanton.  Thus Steven Stanton and Gloria Wise's verdicts shall stand and Shannon Rhodes shall be set for a new trial.  Accordingly,

**IT IS ORDERED** that:

1. Defendants' Renewed Motion for Judgment as a Matter of Law, filed June 6, 2005, **Ct. Rec. 1964**, is **DENIED**.  The Final Judgments as to Steven Stanton and Gloria Wise shall stand as filed on May 19, 2005, Ct. Rec. 1958, and clarified by the Order filed June 7, 2005, Ct. Rec. 1966.

2. Plaintiffs oral request for Federal Rule of Civil Procedure 54(b) certification for appeal is **GRANTED.**  The Final Judgments as to Steven Stanton and Gloria Wise, noted in paragraph 1 may be appealed as there is no just reason for delay.

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW - 15

1  The District Court Executive is directed to file this Order and provide copies to
2  Counsel; Mediator Gary Bloom; **AND TO** pro se Plaintiffs Noreen L. Wynne, Carmela M.
3  Destito-Buttice (for late John P. Destito, Jr.), Marylin F. Mlnarik, and Kerry L. Todd.
4  **DATED** this 15th day of August, 2005.

6                                                   s/ Wm. Fremming Nielsen
                                                    WM. FREMMING NIELSEN
7  07-2605A1                                SENIOR UNITED STATED DISTRICT JUDGE

ORDER DENYING DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW  - 16