FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 20 2006

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |  |
|---|---|---|
| In Re: Hanford Nuclear Reservation Litigation, | ) ) ) ) ) ) ) ) | NO.    CV-91-3015-WFN<br><br>ORDER DENYING SHANNON RHODES' MOTION FOR NEW TRIAL BASED ON JURY MISCONDUCT |

This Order Relates to:    All Cases

Before the Court is Plaintiff Shannon Rhodes' Motion for New Trial Based on Jury Misconduct, filed December 8, 2005 (Ct. Rec. 2149). A telephonic hearing on the Motion was held January 17, 2006. Richard Eymann, Peter Nordberg, and Louise Roselle participated on behalf of the Plaintiffs; Kevin Van Wart and William (Randy) Squires participated on behalf of the Defendants. The Court took the matter under advisement following the hearing.

The Court has reviewed the file, all of the briefing on the Motion, considered the arguments of counsel and is fully informed. For the reasons stated below the New Trial Motion is denied.

## BACKGROUND

Shannon Rhodes was one of six bellwether Plaintiffs that went to trial on April 25, 2005. The jury returned its verdict on the other five Plaintiffs on May 19, 2005, but was unable to reach a verdict on the claims of Shannon Rhodes. (Ct. Rec. 1957) A second trial on the claims of Ms. Rhodes was held on November 7, 2005. The jury returned a verdict in favor of the Defendants on November 23, 2005 (Ct. Rec. 2140).

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 1

1    Plaintiffs filed Shannon Rhodes' Motion for New Trial Based on Jury Misconduct on

2  December 8, 2005 (Ct. Rec. 2149).[1] The Plaintiffs argue that Ms. Rhodes deserves a new trial,

3  based on the affidavit for Ms. Powell,[2] on two grounds: (1) because jurors either lied on their

4  juror questionnaires about knowledge of the litigation or failed to follow the Court's

5  admonition not to read or listen to news coverage of the case, and (2) because extrinsic

6  evidence was introduced into the jury's deliberations by two jurors who advised the other

7  jurors that this was Ms. Rhodes' second trial and that she had lost the first trial.[3] Alternatively,

8  the Plaintiffs request an evidentiary hearing on the prejudicial impact this information could

9  have had on deliberations and the verdict.

10    The Defendants oppose the New Trial Motion. They argue that there is no proof that

11  any juror lied during *voir dire*, that Plaintiffs have not shown the required bias and that the two

12  jurors could have simply recalled the information at some point. Defendants also assert that

13  the information was not extrinsic evidence because a prior trial was mentioned during the

14  second trial and the Court struck the testimony. Defendants seek to cite an unpublished

15  opinion in support of this last argument, *Bradford v. City of Los Angeles,* 21 F.3d 1111, 1994

16  WL 118091 (9th Cir. 1994).[4]

17

18  _____

19    [1]The Plaintiffs requested that the Motion be filed under seal due to the fact that juror

20  names were included in the documents. The Court denied the request to file the Motion under

21  seal by Order filed December 14, 2005 (Ct. Rec. 2148).

22    [2]Shirley Powell was juror number 8.

23    [3]The information that she had "lost" the first trial was erroneous. The jury could not

24  reach a conclusion on Ms. Rhodes' claims in the first trial.

25    [4]The Court will grant Defendants' Motion For Leave to Cite Unpublished Opinion in

26  its Opposition to New Trial Motion and Defendants' Motion to Shorten Time.

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 2

## DISCUSSION

Federal Rule of Civil Procedure 59 governs a motion for a new trial. The Rule provides the grounds for a new trial following a jury determination as follows:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

FED. R. CIV. P. 59(a). The motion for a new trial is committed to the discretion of the district court. *Hard v. Burlington Northern Railroad Company,* 870 F.2d 1454, 1461 (9th Cir. 1989) (*Hard II).* The Rules also provide that the court is to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Federal Rule of Civil Procedure 61. While the litigants are entitled to a fair trial, they are not entitled to a perfect trial. *McDonough Power Equipment v. Greenwood,* 464 U.S. 548, 553 (1984). However, "[o]ne touchstone of a fair trial is an impartial trier of fact - a jury capable and willing to decide the case solely on the evidence before it." *Id. at 554* (internal quotations omitted). When a losing party in a civil case requests a new trial based upon jury misconduct and seeks to impeach a jury verdict, the party must show "by a preponderance of the evidence that the outcome would have been different." *Hard,* 870 F.2d at 1461 (*Hard II).*

The Plaintiffs' New Trial Motion raises a number of issues: the jurors' alleged failure to answer voir dire questions honestly; the jurors' alleged failure to follow the Court's admonitions; the jurors' alleged introduction of extrinsic evidence into deliberations; and whether the Court should order a new trial or an evidentiary hearing. The Court need not address all of the issues however, because the Court believes the Defendants are correct, that the information allegedly introduced into jury deliberations was not extrinsic but in fact was evidence presented during the course of the trial. That determination is dispositive of both Plaintiffs' grounds for a new trial. It obviously disposes of the assertion that extrinsic evidence was introduced into deliberations. It also disposes of the Plaintiffs' first ground for relief

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 3

because if all jurors were privy to the same information from the trial evidence, then the jurors who revealed the information during deliberation could not be presumed to have been dishonest on voir dire or to have failed to heed the Court's admonitions about reading press accounts of the litigation.

The Court therefore turns to the question of whether the information was extrinsic. Plaintiffs present the Affidavit of Ms. Powell, which states that two un-named jurors, told the jury during deliberation that "this was Mrs. Rhodes second trial on the very issues that we were to decide and that she had lost in the first trial." Affidavit of Shirley Powell, filed 12/8/05, Ct. Rec. 2151, ¶ 6. Prior to the second trial the Court had granted the subsection of Defendants' Omnibus Motion in Limine that requested exclusion of reference "to other plaintiffs, the fact that this was a retrial or any verdicts from the prior trial." Order re: Pretrial Conference November 3, 2005, filed 11/4/05, Ct. Rec. 2097. The Plaintiffs agreed that this information was not proper to submit to the second jury.

The finality of the jury process is seriously disrupted when jury verdicts are impeached. *Tanner v. United States,* 483 U.S. 107, 120 (1987). As the Court noted in *Tanner,* "[t]here is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it." *Id.* When commenting on the important interest of finality of a jury verdict the Supreme Court in *Tanner* distinguished cases where there was tampering or external influence from cases involving intrinsic jury matters. *Tanner,* 483 U.S. at 118-120. In that case the Court held that testimony related to juror alcohol and drug use was not extrinsic and would be inadmissible under Rule 606(b). *Id.* at 125.

Evidence that is not introduced at trial, but is acquired through other means such as an experiment is extrinsic evidence. *Marino v. Vasquez,* 812 F.2d 499, 506 (9th Cir. 1987); see also *United States v. Bassler,* 651 F.2d 600, 602 (8th Cir. 1981) ("Extrinsic

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 4

1 or extraneous influences include publicity received and discussed in the jury
2 room [and] matters considered by the jury but not admitted into evidence . . . .")
3 Other examples where courts have held influence to be extrinsic included the introduction
4 of the government's case agent's report into jury deliberation, *United States v. Harber*,
5 53 F.3d 236, 241 (9th Cir. 1995) and a juror telling other jurors that she had
6 received a threatening phone call. *United States v. Angelo,* 4 F.3d 843, 847-48 (9th
7 Cir. 1993).

8     Where evidence has been presented to the jury during trial, it is not considered extrinsic
9 for purposes of a new trial motion. *United States v. Rincon*, 28 F.3d 921, 926 (9th Cir.
10 1994) (the display during deliberation of defendant next to surveillance photograph was
11 not extrinsic because both the defendant and the photograph were presented to the jury during
12 trial); *United States v. Halbert,* 712 F.2d 388, 389 (9th Cir. 1983) (juror's consideration of
13 newspaper article about defendant's beach house did not warrant a new trial because "at the
14 trial the jurors heard considerable evidence about the beach house and [defendant's] life
15 style."); see also *Bradford v. City of Los Angeles,* 21 F.3d 1111, 1994 WL 118091 *5 (9th Cir.
16 1994) (unpublished) (no case law supports the claim that trial testimony which is stricken is
17 extraneous information because all the jurors were present when the testimony is given).

18     The Ninth Circuit has advised that five factors should be considered when evaluating
19 a claim that jurors introduced extrinsic evidence:

20     (1) whether the extrinsic material was actually received, and if so, how;
      (2) the length of time it was available to the jury;
21     (3) the extent to which the jury discussed and considered it;
      (4) whether the extrinsic material was introduced before a verdict was
22     reached, and if so, at what point in the deliberations it was introduced; and
      (5) any other matters which may bear on the issue of the reasonable possibility
23     of whether the introduction of extrinsic material affected the verdict.

24 *Bayramoglu v. Estelle,* 806 F.2d 880, 887 (9th Cir. 1986). Although the court noted in
25 *United States v. Keating,* 147 F.3d 895, 902 (9th Cir. 1998) that "no one of these factors is
26 dispositive in a given case," it seems that unless the first factor is answered in the affirmative,

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 5

1    *i.e.*, that extrinsic material was actually received, the "if so" provision makes further inquiry

2    unnecessary. Each of the other four factors presupposes the existence of the extrinsic material.

3        Here, the relevant comments and testimony from Ms. Rhodes' second trial transcript,

4    noted by the parties and the Court, on the question of whether the information shared with the

5    jurors was extrinsic, include the following:

6        1.    Court's comment during *voir dire* that "this is a civil case, it is a case that has

7    received some notoriety . . . ." Transcript of Jury Selection, filed 12/15/05, Ct. Rec. 2154, p. 3.

8        2.    Court's comment during *voir dire* that "this case has received a good deal of

9    publicity over the years. There have been a number of newspaper articles about it . . . ."

10    Transcript of Jury Selection, filed 12/15/05, Ct. Rec. 2154, p. 5-6.

11        3.    Mr. Eymann's Opening Statement: "At this point in time we are not going to be

12    arguing exhibits with you or trying to go over a single exhibit or through prior trial – excuse

13    me, deposition testimony and get it." Trial Transcript [TT], Vol. 1 filed 11/8/05, Ct. Rec. 2108,

14    p. 81.

15        4.    Dr. Hill's direct testimony: "I could hear it bouncing a little bit. Last time it was too

16    low, when I have done some of these things, so I got a bit closer this time." TT, Vol. 2, filed

17    11/9/05, Ct. Rec. 2110, p. 384.

18        5.    Mr. Eymann's comment during Dr. Hill's direct examination: "We did last time

19    when he was here." TT, Vol. 2, filed 11/9/05, Ct. Rec. 2110, p. 395.

20        6.    Dr. Cutter's direct examination describing his recorded history of Ms. Rhodes:

21    ". . . and I noted that had she has been involved in extensive litigation regarding Hanford

22    which was not going that well and has considerably increased her stress.[5]" TT, Vol. 4, filed

23    11/14/05, Ct. Rec. 2114, p. 724.

24

----

25        [5]This information was also present in Dr. Cutter's recorded medical history. Plaintiffs'

26    admitted exhibit 665. See Exhibit List, filed 11/23/05 (Ct. Rec. 2142-3).

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 6

1   which was not going that well and has considerably increased her stress.[5]" TT, Vol. 4, filed
2   11/14/05, Ct. Rec. 2114, p. 724.

3       7. Dr. Cutter's cross examination by Ms. Browdy:

4       Q: And another thing that you had indicated in the medical report that you
5   wrote up on Mrs. Rhodes was that she told you that her litigation wasn't going
    well?

6       A: What she was referring to, what she talked to me about was that there had
7   recently been a trial and the trial had ended inconclusively.

    The Court: That observation, Doctor Cutter, he wasn't involved, and so, jury,
8   disregard that if you would, please.

9       A: Okay, well, anyway, she did comment on litigation that was ongoing or had
    been ongoing with Hanford, and that she was stressed by that." TT, Vol.4, filed
10  11/14/05, Ct. Rec. 2114, p. 750.

11      8. Dr. Carroll's cross-examination by Mr. Van Wart:

12      Q: . . . How do you like being an after-lunch speaker?

13      A: Since I was the last time, too, I don't like it much.

14  TT, Vol. 5, filed 11/15/05, Ct. Rec. 2116, p. 1129.

15      When considered together, these comments and the testimony support an inference
16  that the information allegedly presented by two jurors during deliberation was not
17  extrinsic. Several of the comments by the Court during *voir dire* and Mr. Eymann's
18  misstatement during opening, are not evidence, but provided a context for the jury to
19  understand the evidence. It is true that most of the testimonial statements standing alone
20  would be insufficient to support the inference. Dr. Cutter's testimony about a prior
21  trial however, when considered within the context of the other comments and
22  testimony, leaves the Court with a firm opinion that the alleged extraneous information
23  about a prior trial was already before the jury. As the court in *Bradford* observed, the fact

24  _____

25      [5]This information was also present in Dr. Cutter's recorded medical history. Plaintiffs'
26  admitted exhibit 665. See Exhibit List, filed 11/23/05 (Ct. Rec. 2142-3).

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 7

1  that the testimony was stricken does not alter the analysis. 21 F.3d 1111, 1994 WL 118091
2  at *5. It could be argued that the testimonial references to the prior trial were not numerous
3  enough during the two-week trial or were not literally the same statements that Ms. Powell
4  asserts were made by the jurors during deliberations.  The Court has considered those
5  possibilities but believes that the inference to be drawn from the trial record is a reasonable
6  one, *i.e.*, the information was not extrinsic.

7      Based upon the determination that the information was not extrinsic, the Court also
8  determines that Ms. Rhodes' affidavit is precluded by Federal Rule of Evidence 606(b). This
9  Rule limits the evidence that may be considered on the issue of jury misconduct. The Rule
10 provides:

11      Upon an inquiry into the validity of a verdict or indictment, a juror may not
       testify as to any matter or statement occurring during the course of the jury's
12      deliberations or to the effect of anything upon that or any other juror's mind or
       emotions as influencing the juror to assent to or dissent from the verdict or
13      indictment or concerning the juror's mental processes in connection therewith,
       **except that a juror may testify on the question whether extraneous**
14      **prejudicial information was improperly brought to the jury's attention** or
       whether any outside influence was improperly brought to bear upon any juror.
15      Nor may a juror's affidavit or evidence of any statement by the juror concerning
       a matter about which the juror would be precluded from testifying be received
16      for these purposes.

17 FED. R. EVID. 606(b) (emphasis added).  Even if the information was actually extrinsic,
18 there is at least one statement in Ms. Powell's Affidavit that is clearly not admissible
19 under the Rule because it reveals how the alleged extrinsic information affected the
20 verdict. She observed that the evidence "had a big impact on deliberations and affected
21 the verdict." Powell Affidavit, ¶ 4. Other portions of the affidavit might also be precluded
22 by the Rule.  The Court's determination that the information was not extrinsic however,
23 means that the entire Affidavit is inadmissible to impeach the verdict under Federal Rule of
24 Evidence 606(b). As the Court has determined that the information allegedly shared in jury
25 deliberations was already before the jury and not extrinsic, it would be error to grant a new
26 trial based upon jury misconduct.

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 8

1    The Plaintiffs request an evidentiary hearing as an alternative to a new trial. The Court
2   is cognizant of the Ninth Circuit's expressed preference for an evidentiary hearing on these
3   issues. *Hard v. Burlington Northern Railroad*, 812 F.2d 482, 485(9th Cir. 1987) (*Hard I*)
4   ("While it is not always an abuse of discretion to fail to hold an evidentiary hearing when
5   faced with allegations of juror misconduct, it is preferable that a hearing be held . . . ")
6   (citation omitted). The Circuit in *United States v. Saya,* 247 F.3d 929, 935 (9th Cir. 2001)
7   noted however, that while it is advisable to hold a hearing, it would not be necessary if the
8   court knew the exact scope and nature of the alleged extrinsic evidence.    *See also*
9   *United States v. Halbert,* 712 F.2d 388, 389 (9th Cir. 1983) (district court correct in
10  refusing to hold evidentiary hearing when "the court knew the exact scope and nature of
11  the newspaper article [read by the juror] and the extraneous information.") Here the Court
12  was apprised of the scope and the nature of the alleged extraneous material obviating a
13  need for an evidentiary hearing.    While necessary in some cases, courts, including this
14  one, are hesitant in any event to "haul jurors in after they have reached a verdict in order
15  to probe for potential instances of bias, misconduct or extraneous influences." *United States*
16  *v. Sun Myung Moon,* 718F.2d 1210, 1234 (2nd Cir. 1983).

17      Another reason an evidentiary hearing is not required is that Plaintiffs can not make a
18  sufficient showing for a hearing.

19          Where a losing party in a civil case seeks to impeach a jury verdict, it
20          must be shown by a preponderance of the evidence that the outcome
            would have been different. Unless the affidavits on their face support
            this conclusion, no evidentiary hearing is required.
21
22  *Hard*, 870 F.2d 1461 (*Hard II*). As Ms. Powell's Affidavit is inadmissible, Plaintiffs lack
23  sufficient evidence in support of a conclusion that the outcome would have been different and
24  no evidentiary hearing is required. It should be noted that at an evidentiary hearing on the
25  issue of jury misconduct the above standard would apply.    This is not the standard
26  identified in Plaintiffs' briefing, nor was the correct standard identified in Defendants'

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 9

1 briefing.   Plaintiffs asserted a party would be entitled to a new trial when "(1) the jury
2 obtains or uses evidence that has not been introduced during trial, and (2) there is   a
3 reasonable possibility that the extrinsic material *could* have affected the verdict.  *Marino v.*
4 *Vasquez,* 812 F.2d 499, 504(9th Cir. 1987)."  Plaintiff Shannon Rhodes' Memorandum in
5 Support of New Trial Based on Juror Misconduct, filed 12/08/05, Ct. Rec. 2150, p. 4,
6 ll. 21-24 (internal quotations omitted) (emphasis in original).  This standard may be correct
7 in the criminal context.  However, it is not the standard for a new trial based on jury
8 misconduct in a civil case which is clearly set forth in *Hard II.*   The notes that showing that
9 the outcome would have been different is a higher standard than showing a reasonable
10 possibility that the extrinsic evidence could have affected the verdict.

11

12 **PLAINTIFFS' SUPPLEMENTAL MATERIAL**

13        The Court's staff received a phone message approximately 4:30 p.m. on January 19,
14 2006, two days after the hearing, advising the Court that Plaintiffs intended to file a
15 supplemental affidavit from Ms. Powell and Mr. Eymann.  Plaintiffs had not requested
16 permission to file supplemental materials.  The Court had already made its determination and
17 this Order was being prepared for filing.  Any supplemental materials on Shannon Rhodes'
18 New Trial Motion is not considered on the Motion.  The interests of finality apply both to
19 trials and to motions.

20

21 **CONCLUSION**

22        The Court is of the firm opinion that the alleged extraneous information introduced into
23 deliberations was not extrinsic, but intrinsic, as the information, even though stricken in part,
24 was before the jury during the second trial.  The information was not an extraneous influence
25 on the jury process.  No evidentiary hearing is necessary to explore the issue.  The Court must
26 respectfully deny Ms. Rhodes' Motion for a New Trial.  Accordingly,

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 10

1    **IT IS ORDERED** that:

2    1.    Shannon Rhodes' Motion for New Trial Based on Jury Misconduct, filed

3    December 8, 2005, **Ct. Rec. 2149**, is **DENIED**.

4    2.    Defendants' Motion to Shorten Time [on Motion for Leave to Cite Unpublished

5    Opinion . . . ], filed December 19, 2005, **Ct. Rec. 2155**, is **GRANTED**.

6    3. Defendants' Motion for Leave to Cite Unpublished Opinion in its Opposition to New

7    Trial Motion, filed December 19, 2005, **Ct. Rec. 2156**, is **GRANTED**.

8    4.    During the pendency of the appeal in this case, Plaintiffs' counsel shall continue to

9    submit to this Court, attorney fee and expense *in camera* reports on the first business day of

10   January and July.  Counsel need not submit a report if counsel have no fees or expenses to

11   report for the time period.

12   5.    The District Court Executive is directed to file this Order and provide copies to

13   Liaison Counsel; Mediator Gary Bloom; **AND TO** pro se Plaintiffs Noreen L. Wynne,

14   Carmela M. Destito-Buttice (for late John P. Destito, Jr.), Marylin F. Mlnarik, and Kerry L.

15   Todd.

16   **DATED** this day of _SO_ day of January 2006.

17

18                                    _____
                                      WM. FREMMING NIELSEN
19   01-1806A                         SENIOR UNITED STATED DISTRICT JUDGE

20

21

22

23

24

25

26

ORDER DENYING SHANNON RHODES' MOTION FOR
NEW TRIAL BASED ON JURY MISCONDUCT- 11